Hyung S. Choi, State Bar 015669
Veronika Fabian, State Bar 018770
CHOI & FABIAN, PLC
1423 S. Higley Rd., Suite 110
Mesa, Arizona  85206
tel:  (480) 517-1400
fax: (480) 517-6955
hyung@choiandfabian.com
veronika@choiandfabian.com
 Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald M. Trevino,<br><br>Plaintiff,<br><br>vs.<br><br>Citicorp Credit Services Inc. ("USA");<br>Equifax Information Services, LLC, and<br>Leading Edge Recovery Solutions, LLC,<br><br>Defendants. | NO.<br><br>**COMPLAINT FOR DAMAGES** |

## INTRODUCTION

1. Mr. Trevino settled his Citicorp account in full in February of 2007 based on Leading Edge Recovery Solutions, LLC's (Citicorp's debt collector) promise that Citicorp would update the trade-line to show the "account paid in full for less than the full balance." Despite this agreement and Mr. Trevino's repeated disputes, Citicorp and Equifax continue to report the account as a charge-off on Mr. Trevino's credit report. Plaintiff brings this action to

remedy Defendants' violations of the Fair Credit Reporting Act ("FCRA") and breach of contract.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681(p) and 28 U.S.C. §1337(a).

3. Defendants are licensed to do business in the state of Arizona, and thus this Court has personal jurisdiction over them and venue is proper. 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Ronald Trevino ("Mr. Trevino") is a natural person residing in Maricopa County, Arizona.

5. Plaintiff is an individual and is thus a "consumer" as defined by § 1681a(c) of the FCRA.

6. Defendant Citicorp Credit Service Inc. ("USA") ("Citicorp") is a Delaware corporation, licensed to do business in Arizona.

7. Equifax Information Services LLC ("Equifax") is a Georgia limited liability company, licensed to do business in Arizona.

8. Equifax is a consumer reporting agency, as defined in § 1681(f) of the FCRA, and regularly engaged in the business of assembling, evaluating, and

2

dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in § 1681a(d) of the FCRA to third parties.

9. Leading Edge Recovery Solutions, LLC, ("Leading Edge"), is an Illinois corporation, licensed to do business in Arizona.

10. Leading Edge is a licensed debt collector in the state of Arizona.

## FACTUAL ALLEGATIONS

11. In July of 2004, Mr. Trevino obtained a Sears credit card through Citicorp d/b/a CBSUASears. ("The Account").

12. Mr. Trevino had some trouble making payments on the Account.

13. Upon information and belief, in early 2007, Citicorp retained Leading Edge to collect on the Account.

14. At all relevant times, Leading Edge acted as an agent for, and within the scope of its actual or apparent authority for, Citicorp.

15. In February of 2007, Mr. Trevino was contacted by Leading Edge regarding the Account.

16. Leading Edge represented to Mr. Trevino that if he paid $3,736.20, his credit report would be changed to reflect the account as "paid in full for less than the full balance."

3

17. Based on Leading Edge's representation, Mr. Trevino paid $3,736.20 to Leading Edge on February 21, 2007.  (Mr. Trevino's Bank of America records attached as Exh. A).

18. Despite the fact that Mr. Trevino had settled the Account in full, Citicorp subsequently sold the Account to LVNV Funding LLC ("LVNV").

19. Resurgent Capital Services ("Resurgent"), on behalf of LVNV, attempted to collect on the Account from Mr. Trevino.

20. Mr. Trevino notified Resurgent and LVNV that the Account had been settled in full.

21. Mr. Trevino subsequently received verification from Resurgent that the Account had been settled in full and that his credit report should list the account as "paid in full for less than the full balance."  (Resurgent's May 11, 2010 letter attached as Exh. B).

22. In April of 2010, Mr. Trevino, and his wife Mary Lee Trevino, decided to refinance their home.

23. Through the refinancing process, Mr. Trevino became aware that Equifax and Citicorp were listing the Account on his Equifax credit report as a "Charge Off."

24. Mr. Trevino submitted an on-line dispute to Equifax regarding the Account.

25. Upon information and belief, Equifax forwarded Mr. Trevino's dispute to Citicorp.

26. Upon information and belief, Citicorp did not conduct a reasonable investigation of Mr. Trevino's dispute.

27. Upon information and belief, Citicorp updated the Account on Mr. Trevino's credit report to reflect a paid charge off.

28. Upon information and belief, Equifax did not conduct an independent investigation of Mr. Trevino's dispute.

29. On April 15, 2010, Equifax sent Mr. Trevino the results of its investigation stating:

> We have researched the credit card account 512107503469*.  The results are: This account has been updated to report as a paid charge off.

(Relevant portion of Mr. Trevino's Equifax credit report dated 4/15/10 attached as Exh. C).

30. However, the line item for the Account on Mr. Trevino's Equifax report did not show a "paid charge off."

31. Instead, it showed a "Charge Off" that had been transferred or sold, with an account balance of $0.00.

32. Nonetheless, Mr. Trevino was able to use the results of the investigation to get his refinancing completed.

5

33. On April 16, 2010, Mr. Trevino sent another letter to Citicorp requesting that it update his credit report to read "Account settled in full for less than the full balance." (Mr. Trevino's April 16, 2010 letter to Citicorp attached as Exh. D).

34. Mr. Trevino received no response from Citicorp.

35. On June 2, 2010, Mr. Trevino received a letter from Home Depot Credit Services ("Home Depot") closing his credit card account. (Home Depot letter of June 2, 2010 attached as Exh. E).

36. The Home Depot letter stated it was closing his account based in whole or in part on information found in his Equifax credit report.

37. Mr. Trevino requested his credit report from Equifax.

38. Equifax and Citicorp were still reporting the Account as a "charge off" and not as a "paid charge off" despite Equifax's representation in its letter of April 15, 2010. (Relevant portion of Mr. Trevino's Equifax credit report dated 6/23/10 attached as Exh. F).

39. Nor was Citicorp reporting the Account as settled in full for less than the full balance.

40. On August 11, 2010, Mr. Trevino sent another dispute letter to Equifax, attaching the letter from Resurgent evidencing that the account had been

6

settled in full, and that Equifax had already promised to report the account as a paid charge off. (Mr. Trevino's dispute letter is attached as Exh. G).

41. Upon information and belief, Equifax forwarded Mr. Trevino's dispute to Citicorp.

42. Upon information and belief, Citicorp did not conduct a reasonable investigation of Mr. Trevino's dispute.

43. Upon information and belief, Citicorp verified the debt.

44. On August 25, 2010, Equifax sent Mr. Trevino a letter stating that the results of the investigation were as follows:

> Equifax has verified that this item has been reported correctly. This creditor is currently reporting a zero balance for this account.

(Equifax's result of investigation attached as Exh. H).

45. Thus, Equifax continues to report the account as a charge off with a zero balance.

46. Mr. Trevino subsequently applied for another Home Depot credit card.

47. Mr. Trevino's application for credit was denied. (Home Depot's denial letter dated September 4, 2010 attached as Exhibit I).

48. Home Depot's denial letter stated that its credit decision was based in whole, or in part, on a report obtained from Equifax.

49. Upon information and belief, Home Depot's denial was based on the inaccurate Citicorp credit item on his Equifax credit report.

50. Mr. Trevino has spent time and money trying to get Defendants to comply with their agreements and the Account's affect on their ability to obtain credit together.

51. Defendants' acts and omissions have caused a great deal of tension between Mr. Trevino and his wife because of their inability to apply for credit together.

52. He has also been embarrassed in front of his friends and neighbors.

53. He has experienced anxiety, frustration, loss of sleep, loss of hair and high blood pressure as a result of Defendants' acts and omissions.

54. Mr. Trevino does not want to apply for credit in the future because of this derogatory item on his credit report.

### CLAIMS AGAINST CITICORP

### CAUSE OF ACTION NO. I: VIOLATION OF THE FCRA (AGAINST CITICORP)  15 U.S.C.§1681s-2(b)(1)

55. Upon receiving notice of Mr. Trevino's disputes from Equifax, Citicorp failed to reasonably investigate those disputes in violation of the FCRA. 15 U.S.C.§1681s-2(b)(1).

56. Citicorp knowingly and intentionally failed to investigate those disputes in conscious disregard of the rights of Mr. Trevino.

57. Citicorp willfully and/or negligently violated the provisions of the FCRA.

58. As a result of Citicorp's violations of the FCRA, Mr. Trevino suffered damages in an amount to be determined by this Court.

59. Mr. Trevino is therefore entitled to recover actual or statutory damages, whichever is greater, punitive damages, and attorney's fees and costs.  15 U.S.C. § 1681n(a).

## CAUSE OF ACTION NO. II: BREACH OF CONTRACT

60. Citicorp, through its agent, agreed to report the Account as "paid in full for less than its full balance" upon Mr. Trevino's payment of $3,736.20.

61. Mr. Trevino paid Citicorp, through its agent Leading Edge, $3,736.20.

62. Citicorp's failure to update Mr. Trevino's Equifax credit report to "paid in full for less than its full balance" constitutes a breach of its contract with Mr. Trevino.

63. As a result of Citicorp's breach of contract, Mr. Trevino suffered damages in an amount to be determined by this Court.

64. Mr. Trevino is entitled recover his actual damages.

## CLAIMS AGAINST LEADING EDGE RECOVERY

## CAUSE OF ACTION NO. III:  BREACH OF CONTRACT

65. In the alternative to Cause of Action No. II, Leading Edge agreed that the Account would be reported as "paid in full for less than its full balance" upon Mr. Trevino's payment of $3,736.20.

66. Mr. Trevino paid Leading Edge $3,736.20.

67. Leading Edge's failure to update Mr. Trevino's Equifax credit report to "paid in full for less than its full balance" for the Account constitutes a breach of its contract with Mr. Trevino.

68. As a result of Leading Edge's breach of contract, Mr. Trevino suffered damages in an amount to be determined by this Court.

69. Mr. Trevino is entitled recover his actual damages.

## CLAIM AGAINST EQUIFAX

## COUNT IV: VIOLATION OF THE FCRA

70. In the entire course of its action, Equifax willfully and/or negligently violated the provisions of the FCRA in the following respects:

    a. By failing to conduct a reasonable reinvestigation upon Mr. Trevino's disputes of the incorrect reporting on his credit report. 15 U.S.C. § 1681s-2(b).

71. As a result of Equifax's failure to comply with the FCRA, Mr. Trevino has suffered damages in an amount to be determined by this Court.

72. Mr. Trevino is therefore entitled to recover actual or statutory damages, whichever is greater, punitive damages and costs and attorney's fees. 15 U.S.C. §. 1681n.

**JURY DEMAND**

73. Mr. Trevino demands a jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief against Defendants:

      a)    Actual damages;

      b)    Statutory damages;

      c)    Punitive damages;

      c)    Attorney's fees; and

      d)    Costs.

RESPECTFULLY SUBMITTED November 18, 2010.

CHOI & FABIAN, PLC


    Veronika Fabian /s/
Hyung S. Choi
Veronika Fabian
Attorneys for Plaintiff